673 A.2d 876

**Jane RUSSELL, Administratrix of the Estate of Joshua Alexander Russell, Deceased, and Jane Russell, in her own right, Appellant,**

**v.**

**ALBERT EINSTEIN MEDICAL CENTER, NORTHERN DIVISION, and Soleiman Soli, M.D., and Jeffrey Levine, M.D., Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1995.

Decided March 28, 1996.

Reargument Denied May 31, 1996.

Marc G. Brecher, Philadelphia, for Jane Russell.

David J. Griffith, Howard M. Cyr, III, Philadelphia, for Albert Einstein Medical Center and Jeff Levine, M.D.

Dean F. Murtagh, Philadelphia, for Soleiman Soli, M.D.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION OF THE COURT

FLAHERTY, Justice.

This case involves a question of interpretation of Pa.R.C.P. 4020(a)(5): whether a registered nurse may be a "medical witness" whose deposition testimony may be used at trial whether or not the witness is available to testify.[1]

Appellant Jane Russell entered Albert Einstein Medical Center (AEMC), appellee, in labor with her son Joshua. She was placed under the care of Dr. Levine, appellee, a chief resident in obstetrics and gynecology. Twelve hours later, it was noted that appellant had a fever, which was apparently due to an infection of the membranes surrounding the fetus. A broad spectrum antibiotic was administered to combat the infection, and Dr. Levine attempted without success to effect a vaginal delivery by vacuum extraction and forceps. Appellee Dr. Soli, the attending physician on call, was telephoned at home and apprised of the situation. Dr. Soli returned to the hospital and consulted with Dr. Levine, and the two decided to allow appellant's labor to proceed for a short time longer. Dr. Soli later examined appellant and decided to deliver the baby by caesarean section. The child died of a streptococcal infection eight hours after birth.

Appellant brought a wrongful death action against appellees on the theory that her son died of a streptococcal infection due to appellees' failure to perform a timely caesarean section. The chronology of events preceding the birth was a critical element of appellant's case, particularly in establishing the negligence of Dr. Soli and in allocating negligence between the two doctors. The exact times when Dr. Soli was contacted, when he arrived at the hospital, when he first examined

---

1. Pa.R.C.P. 4020(a)(5) states: "A deposition upon oral examination of a medical witness, other than a party, may be used at trial whether or not the witness is available to testify."

appellant, and when he performed the delivery were critical factual issues disputed at trial.

During pretrial discovery, Kimberly Arrowsmith, a registered nurse employed by AEMC who attended appellant Russell during her labor, gave a deposition upon oral examination which was attended by attorneys for all parties. She testified as to the time Dr. Soli first arrived to examine the patient, relying on the contemporaneous notes she had entered on the patient's chart, contradicting Dr. Soli, who testified that he had arrived significantly earlier. At the trial, the nurse's deposition was admitted into evidence under Pa.R.C.P. 4020(a)(5) as that of a medical witness, without any showing that she was unavailable to testify. The jury returned a verdict of $705,000 for appellant, apportioning 75 percent of liability to Dr. Levine and 25 percent to Dr. Soli. AEMC was also held liable, as both doctors were agents of the hospital.

The Superior Court reversed, holding that the term "medical witness" in rule 4020(a)(5) is limited to physicians so it was error to admit the nurse's deposition testimony against Dr. Soli. Though the court found no error with respect to the other parties, it remanded for a new trial against AEMC and both doctors because the evidence erroneously admitted against Dr. Soli might have affected apportionment of damages among all parties.[2]

The trial court stated its rationale for admitting the nurse's deposition into evidence as follows:

The rule specifies "medical witness." It does not say physician. A nurse who was caring for patients in a hospital, and was to testify regarding events taking place while

2. Appellant argues that such a remedy was improper, even if admission of the nurse's deposition testimony was erroneous. Appellant argues that the Superior Court misconstrued the holding in *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 507 A.2d 1 (1986), which in some circumstances, possibly including this case, abrogates the ordinary rule that a new trial "means a new trial generally ... as to all parties and all issues." *Id.* at 21, 507 A.2d at 11. Appellant argues that she should not be deprived of her judgments against AEMC and Dr. Levine merely because of an error affecting only Dr. Soli. Despite the possible merit of this argument, our disposition of the issue concerning Pa.R.C.P. 4020(a)(5) makes it unnecessary to address this argument.

she was acting in a nursing capacity clearly falls into the category of medical personnel. When asked to testify regarding her nursing duties, she is a medical witness, thus Pa.R.Civ.P. 4020(a)(5) applies directly to her, enabling deposition testimony to be admissible at trial. The underlying policy reason behind the rule is to minimize the time medical personnel must spend in a courtroom. The policy reasons which justify wanting to minimize the time physicians spend in a courtroom apply equally to nurses, as well as other medical personnel. The defendants' assertion to the contrary is without merit and lacks any foundation in logic. Clearly, [if the rule were intended] to apply only to physicians, the more broad term "medical witness" would not have been used.

Slip op. at 9–10. In reversing, the Superior Court wrote:

Were this Court to extend Rule 4020(a)(5) to non-physician "medical witnesses," beginning with nurses, we can envision its utilization in myriad situations not intended by the Supreme Court. In the present case, for example, the Rule was invoked to allow for Nurse Arrowsmith's testimony regarding when Dr. Soli arrived to examine Ms. Russell, testimony not "medical" in nature. Under the trial court's interpretation of the Rule, any hospital support personnel with this knowledge would be viewed as "medical witnesses" and could have provided the same testimony, whether they were nurses, social workers or even custodial staff in the area. We find these persons are not "medical witnesses" within the ambit of Rule 4020(a)(5). . . .

*Russell v. Albert Einstein Medical Center,* 434 Pa.Super. 295, 301, 643 A.2d 102, 105 (1994). The Superior Court also relied heavily on the lengthy explanatory note to Rule 4020, emphasizing that the term "physician" is used in reference to medical witnesses.

We hold that the trial court was correct in interpreting the term "medical witness" in Rule 4020 to include a registered nurse, and the court's quoted rationale is a succinct, helpful summary of the justification for the interpretation. A hospital nurse, testifying about her care of a patient, is, in common

parlance, a medical witness. Despite the Superior Court's assertion to the contrary, testimony about the times at which she and her supervising physicians administered treatments to the patient is very much medical in nature, addressing a central issue in the medical malpractice trial. The Superior Court's assertion that the trial court's interpretation would embrace social workers and custodial staff is also inaccurate, as the trial court clearly limited its holding to a registered nurse who was directly engaged in providing medical care to a patient.

The trial court was also correct in perceiving that the reason for the rule—minimizing the time medical personnel must spend in a courtroom—applies equally to nurses as to doctors. Medical personnel involved directly in the treatment of patients should not be forced to make time-consuming courtroom appearances unnecessarily. Furthermore, the restrictive reading of "medical witness" which appellees propose is not supported by the explanatory note to Rule 4020 which refers nine times to "medical witness" or "medical expert" when discussing the scope and purpose of Rule 4020(a)(5). The explanatory note uses the term "physician" only once when giving examples of the types of witnesses who come within subsection (a)(5) and the types of witnesses who are outside the scope of this subsection.

Finally, it is reasonable to give some weight to the obvious ease with which the rule might have used the term "physician" or "medical doctor" rather than the broader term "medical witness" if the interpretation adopted by the Superior Court were correct. *See, e.g.,* Pa.R.C.P. 4010.

The trial court, therefore, committed no error in admitting the nurse's deposition testimony in the trial of this case.

The order of the Superior Court is reversed, and the judgment of the court of common pleas is reinstated.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

CASTILLE, J., files a dissenting opinion.

CASTILLE, Justice, dissenting.

The majority holds that the term "medical witness" as used in Pa.R.C.P. 4020(a)(5) applies to nurses. Because I do not believe that Rule 4020 was intended to have such a broad scope, I must respectfully dissent.

The majority argues that the Rule was not intended to be limited to physicians because the term "physician" could have been used in the rule instead of "medical witness." However, I believe the reason the term "physician" was not used is because such a limitation would unnecessarily exclude other categories of highly trained medical care providers who may not be physicians but who still face the same considerations as physicians regarding inconvenience to their patients and professional practices which justify the special considerations of the rule in the first place. For example, dentists, chiropractors and psychologists are not physicians, but all schedule appointments with patients who will be inconvenienced, and perhaps endangered, by the need for the health care provider to appear in court rather than render professional services.[1]

There is a fundamental difference between a medical witness who is highly trained and often a specialist in his or her field of medicine and whose professional task is the diagnosis of illness and the direction of treatment regimens for such illnesses as compared to an individual who carries out the treatment or regimen ordered. While both may be essential, the services of the former are critical while the services of the latter are not and, therefore, should not received the same considerations given to physicians and other medical witnesses whose testimony is needed at trial.

Although nursing care is essential to the treatment of patients, nurses generally "will have no 'personal' problems like the physician, whose problems have been the justification

---

1. Connecticut has a similar rule providing for the use of deposition testimony of medical witnesses at trial. That rule specifies that the depositions of physicians, psychologists, chiropractors, natureopathic [sic] physicians, osteopathic physicians and dentists may be received into evidence in lieu of calling the witness to testify at trial. Conn.Gen. Stat. § 52–149a.

for special treatment." 1978 Explanatory Note to Pa.R.C.P. 4020. While the unavailability of a physician or other medical witness caused by a court appearance may necessitate the rescheduling of a patient, or perhaps many patients, the unavailability of a nurse can usually be accommodated by the rescheduling of other nurses, thereby avoiding the inconvenience to patients and the disruption of a professional medical practice. Because the special circumstances justifying the rule are not present when a nurse is required to testify in court, I do not believe that nurse witnesses were intended to come within the definition of "medical witness."

Accordingly, I would affirm the order of the Superior Court reversing the judgment of the Court of Common Pleas.[2]

**2.** Because I do not agree with the majority that the deposition testimony was admissible under Pa.R.C.P. 4020(a)(5), I believe that the Court should address the question of whether it was error to remand the case for a new trial as to all defendants. This Court held in *Rivera v. Philadelphia Theological Seminary* that a new trial does not mean a new trial as to all parties generally where the error which is the basis for the grant of a new trial only prejudiced one party. 510 Pa. 1, 22, 507 A.2d 1, 12 (1986). Because the nurse's testimony in this case only related to Dr. Soli's liability, only Dr. Soli should be granted a new trial.